## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|                                         |     |                               |
| --------------------------------------- | --- | ----------------------------- |
| In re:                                  | )   | Chapter 11                    |
|                                         | )   |                               |
| CARIBE MEDIA, INC., et al.,[1]          | )   | Case No. 11-11387 (KG)        |
|                                         | )   |                               |
|                                         | )   |                               |
| Debtors.                                | )   | Joint Administration Requested |
|                                         | )   |                               |

## DEBTORS' MOTION FOR ENTRY OF ORDER (A) AUTHORIZING DEBTORS TO UTILIZE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, AND (C) SCHEDULING FINAL HEARING

Caribe Media, Inc. ("CMI") and CII Acquisition Holdings, Inc. ("Holdings"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order"):[2] (a) authorizing the Debtors to use "Cash Collateral" (as defined under Section 363 of title 11 of the United States Code, (the "Bankruptcy Code," 11 U.S.C. §§ 101-1532)) on an interim basis pursuant to Sections 361 and 363 of the Bankruptcy Code pending a final hearing on the Motion (the "Final Hearing"); (b) approving the form of adequate protection to be provided to the Debtors' prepetition secured lenders (the "Prepetition Secured Lenders") pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code; (c) prescribing the form and manner of notice and setting the time for the Final Hearing to consider entry of a final order authorizing the relief provided in the Interim Order on a permanent basis (the "Final Order"); and (d) granting related relief. The relief requested in this

---

[1] The Debtors, together with the last four digits of each of the Debtors' federal tax identification number (if applicable), are: Caribe Media, Inc. (9005) and CII Acquisition Holding Inc. For the purpose of these chapter 11 cases, the service address for the Debtors is: 188 Inverness Drive West, Suite 800, Englewood, CO 80112.

[2] The Debtors will file a proposed Final Order within five (5) days prior to the final hearing on this Motion.

Motion is justified by the facts set forth in the *Declaration of Chris Batson, the Debtors' Chief Financial Officer, in Support of First Day Motions* (the "First Day Declaration").

## Preliminary Statement

1.      The Debtors come before the Court seeking authority to continue to use Cash Collateral based on the following facts:

- The Debtors have more than $1.3 million in unrestricted cash, as of the most recent date prior to the Petition Date for which the Debtors have current numbers.

- As reflected in the Debtors' 26-week cash flow forecast, attached hereto as **Exhibit B**, the Debtors expect to continue to have a positive operational cash flow during the projection period.

- The Debtors' Prepetition Secured Lenders have consented to the Debtors' use of Cash Collateral, on the terms reflected in the Interim Order.

- The Debtors have an immediate postpetition need for the use of Cash Collateral in order to, among other things, continue the operations of their business and the operations of their non-Debtor subsidiaries.

2.      The Debtors respectfully submit that the foregoing facts justify entry of the Interim Order.

## Summary of Proposed Interim Order

3.      Pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the following summarizes the material terms of the Interim Order, which are discussed in more detail below:[3]

---

[3]      The summary of the Interim Order is qualified in all respects by reference to the Interim Order, and to the extent of any inconsistency between the Motion and the Interim Order, the Interim Order shall govern. Except as otherwise defined in this Motion, all capitalized terms shall have the meaning ascribed to them in the Interim Order.

K&E 18927954.8

| Material Terms | Summary of Material Terms | Paragraph of Interim Order |
|---|---|---|
| **Entities with an Interest in Cash Collateral:** <br><br> (Bankr. R. 4001(b)(1)(B)(i)) | Cantor Fitzgerald Securities, as administrative agent acting on behalf of all other lenders party to the Prepetition Credit Agreement | ¶ (a) |
| **Purpose for Use of Cash Collateral:** <br><br> (Bankr. R. 4001(b)(1)(ii); Local R. 4001-2(a)(i)) | The Debtors have an immediate need to use the Prepetition Collateral (including but not limited to Cash Collateral), in order to, among other things, preserve the value of the Debtors' businesses and permit the orderly continuation of their businesses. The Debtors' use of the Prepetition Collateral (including Cash Collateral) is necessary (x) to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the value of their estates and (y) to alleviate any concerns of trade vendors and employees of the Debtors and their operating subsidiaries. | ¶ 5(b) |
| **Cross-Collateralization for Secured Creditors** <br><br> (Local R. 4001-2(a)(i)(A)) | None | n/a |
| **Findings of Validity, Perfection or Amount of Prepetition Liens** <br><br> (Local R. 4001-2(a)(i)(B)) | <u>Validity and Priority of Prepetition Liens</u>.  Subject in all respects to the Carve-Out and any forbearance agreement entered into by and among the Prepetition Agent and certain non-debtor subsidiaries of the Debtors), the Interim Order provides: <br><br> 1.   The Prepetition Credit Parties have granted valid, binding, perfected, enforceable, first priority liens upon and security interests in the the Prepetition Collateral to the Prepetition Agent for the benefit of the Prepetition Secured Parties; <br><br> 2.   The Prepetition Agent's first priority liens upon and security interests in the Prepetition Collateral, for the benefit of the Prepetition Secured Parties, are not subject to avoidance, subordination, recharacterization, recovery, successful attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and <br><br> 3.   Substantially all cash, securities or other property of the Debtors (and the proceeds therefrom) as of the Petition Date, including without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Debtors in any account or accounts are subject to valid, perfected, enforceable, first priority liens under the Prepetition Loan Documents and applicable law, for the benefit of the Prepetition Secured Parties. | ¶¶ 4(iv) - (v) |

K&E 18927954.8

| Material Terms | Summary of Material Terms | Paragraph of Interim Order |
|---|---|---|
| **Provisions Seeking to Waive Rights under 506(c) Without Notice** <br><br> **(Local R. 4001-2(a)(i)(C))** | Section 506(c) and 552(b) Waivers. Subject to and effective upon entry of the Final Order, notwithstanding anything to the contrary contained in the Interim Order, except to the extent of the Carve Out, (a) no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral or the Prepetition Collateral (including the Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition Agent, as the case may be, (b) no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Agent or the other Prepetition Secured Parties and (c) nothing contained in the Interim Order shall be deemed to be a consent by the Prepetition Agent or the other Prepetition Secured Parties to any charge, lien, assessment or claim against the Collateral or the Prepetition Collateral (including the Cash Collateral) under section 506(c) of the Bankruptcy Code or otherwise. | ¶ 15 |
| **Immediate Grants of Claims or Causes of Action Arising Under 11 U.S.C. § § 544, 545, 547, 548 and 549** <br><br> **(Local R. 4001-2(a)(i)(D))** | The Prepetition Agent (for itself and for the benefit of the Prepetition Secured Parties) is granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtors, security agreements, pledge agreements, mortgages, financing statements), the Adequate Protection Liens upon all prepetition and postpetition assets and property of the Debtors of any kind or nature whatsoever, now owned or hereafter acquired, and all proceeds of such proceeds, rents, products, and profits, including, without limitation, subject to entry of the Final Order, the proceeds or property recovered in respect of Causes of Action including the Collateral, subject and subordinate only to (y) valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy code, and (z) the Carve Out. | ¶ 7(c) |
| **Deeming Prepetition Secured Debt to be Postpetition Debt or Using Postpetition Loans to Pay Prepetition Debt** <br><br> **(Local R. 4001-2(a)(i)(E))** | None | n/a |

4

| Material Terms | Summary of Material Terms | Paragraph of Interim Order |
|---|---|---|
| **Carve-Out**<br><br>(Local R. 4001(a)(i)(F)) | "Carve Out" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, and (ii) after the occurrence and during the continuance of a Termination Event and delivery of the Carve Out Notice, which may be delivered via email, to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of Professional Fees incurred after the business day following delivery of the Carve Out Notice and allowed by the Court at any time, in an aggregate amount not exceeding the Carve Out Cap, by Persons or firms retained by the Debtors and the Committee, if any (but excluding fees and expenses of third party professionals employed by such members of the Committee); plus (iv) all unpaid Professional Fees allowed by the Court at any time that were incurred on or prior to the business day following delivery of the Carve Out Notice, whether paid or unpaid prior to such date; provided, that, so long as a Carve Out Notice shall not have been delivered, the Carve Out shall not be reduced by the payment of Professional Fees allowed at any time by the Court and payable under Sections 328, 330 and 331 of the Bankruptcy Code; provided, further that (x) no portion of the Carve Out shall be available to pay any such Professional Fees incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation or any threatened litigation against the Prepetition Secured Parties, and (y) nothing in the Interim Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates. For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Order or in the Prepetition Loan Documents, the Carve Out shall be senior to the adequate protection liens, all claims and any and all other forms of adequate protection, liens or claims securing the Prepetition Obligations granted or recognized as valid, including the claims, liens and security interests granted to the Prepetition Secured Parties. Upon delivery of a Carve Out Notice, prior to making any distributions, the Debtors shall deposit an amount equal to the Professional Fees incurred and unpaid as of such time, plus an amount equal to the Carve Out Cap in the Carve Out Account to be utilized solely for the payment of Professional Fees, and the Prepetition Agent and any Lender (as defined in the Prepetition Credit Agreement) shall not hinder or delay the Debtors' or any other party in interest's compliance with the foregoing deposit requirement, provided, however, that the Debtors depositing such monies into the Carve Out Account shall not impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates. The Debtors' deposit of any amount into the Carve Out Account shall not reduce the amount of the Carve Out or the Professionals eligible to be paid therefrom. | ¶ 7(b) |
| **Adequate Protection**<br><br>(Bankr. R. 4001(b)(1); Local R. 4001-2(a)(i)(B)) | The Debtors will provide the following forms of adequate protection, in each instance subject to the Carve-Out:<br><br>Adequate Protection Liens. The Debtors shall grant, in favor of the Prepetition Agent, the Adequate Protection Liens upon all prepetition and postpetition assets and property of the Debtors of any kind or nature whatsoever, now owned or hereafter acquired, and all proceeds | ¶¶ 7(a) - (d) |

| Material Terms | Summary of Material Terms | Paragraph of Interim Order |
|---|---|---|
| | of such proceeds, rents, products, and profits, including, without limitation, subject to entry of the Final Order, the proceeds or property recovered in respect of Causes of Action including the Collateral, subject and subordinate only to (y) valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy code, and (z) the Carve Out. The Adequate Protection Liens shall not be (A) subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and the Debtors' estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (B) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise, except with respect to liens or security interests granted in connection with any Court-approved Debtor-in-Possession financing that is consented to by the Prepetition Agent. | |
| | <u>Super-Priority Claim.</u> The Prepetition Secured Parties shall be allowed Adequate Protection Claims, which Adequate Protection Claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors including, without limitation, subject to entry of the Final Order, the proceeds or property recovered in respect of the Debtors' claims and Causes of Action, and any proceeds or other amounts received in respect thereof and property received thereby whether by judgment, settlement or otherwise. The Adequate Protection Claims shall be subject and subordinate only to the Carve Out and any Debtor-in-Possession financing approved by the Court and consented to in writing by the Prepetition Agent. | |
| | <u>Fees and Expenses.</u> As additional adequate protection for any Collateral Diminution, subject to section 506(b) of the Bankruptcy Code, the Debtors shall pay in cash: (i) the reasonable, documented professional fees and expenses (including but not limited to, the fees and disbursements of Kaye Scholer LLP, Potter Anderson & Corroon, LLP, Loughlin Meghji + Company, third party consultants, including financial consultants and auditors) payable to or incurred by the Prepetition Agent under and pursuant to the Prepetition Credit Agreement and the other Prepetition Loan Documents arising prior to the Petition Date; and (ii) on a current basis, the reasonable, documented professional fees and expenses (including but not limited to, the fees and disbursements of Kaye Scholer LLP, Potter Anderson & Corroon, LLP and Loughlin Meghji + Company) payable to or incurred by the Prepetition Agent under and pursuant to the Prepetition Credit Agreement and the other Prepetition Loan Documents arising on or subsequent to the Petition Date. The payment of the fees, expenses and disbursements set forth in this paragraph 7(d) of the Interim Order (including professional fees and expenses of Kaye Scholer LLP, Potter Anderson & Corroon, LLP, Loughlin Meghji + Company and any other professionals or advisors retained by or on | |

6

| Material Terms | Summary of Material Terms | Paragraph of Interim Order |
|---|---|---|
| | behalf of the Prepetition Agent) shall be made within the Review Period of the Invoiced Fees (subject in all respects to any applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; provided, however, that the Debtors, the Committee, if any, and the United States Trustee shall preserve their right to dispute the payment of any portion of the Invoiced Fees if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees; and (ii) the Debtors, the Committee, if any, or the United States Trustee files with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Prepetition Agent, of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees. | |
| **Budget**<br><br>(Bankr. R. 4001(b)(I)(iii); Local R. 4001-2(a)(ii)) | Subject to paragraph 6 of the Interim Order and the other provisions of the Interim Order, the Debtors are authorized to use the Prepetition Collateral (including the Cash Collateral) of the Prepetition Secured Parties (i) in accordance with and pursuant to the terms and provisions of the Interim Order; (ii) for payment of Professional Fees, including the Carve Out; and (iii) subject to the Budget, for general corporate purposes in order to permit the orderly continuation of their businesses and (iv) to pay prepetition vendor claims of non-insiders incurred in the ordinary course up to an aggregate amount of $500,000 provided that the Prepetition Agent shall be given advance notice of the payment of any such prepetition vendor claims in accordance with this clause (iv) and the identity of any such vendor receiving payment; provided further that (a) the Prepetition Secured Parties are granted adequate protection as hereinafter set forth; (b) except on the terms and conditions of the Interim Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral. The Debtors' right to use Cash Collateral shall terminate in accordance with paragraph 11 of the Interim Order.<br><br>The Debtors shall not (i) at any Measurement Date (as defined herein) permit cumulative CMI Operating Cash Flows (as such term is reported in the Budget to be less than the amount forecast in the Budget minus the greater of (x) twenty percent (20%) of the amount set forth in the Budget for such cumulative CMI Operating Cash Flows or (y) $350,000 (it being understood that this clause (i) shall not apply to the fees and expenses described in paragraph 7(d) below or Professional Fees), and (ii) make any payments or expenditures not expressly provided for in the Budget, including but not limited to management fee payments, without the prior written consent of the Prepetition Agent. The limitations set forth in the Interim Order shall be tested utilizing the initial Budget delivered to the Prepetition Agent pursuant to the Interim Order. Two weeks prior to the end of the last week of the Budget, the Debtors shall deliver to the Prepetition Agent an updated Budget, in form and substance satisfactory to the Prepetition Agent, which shall replace the prior Budget for purposes of measuring compliance with this paragraph 6(a). For purposes of this paragraph, the Measurement Date shall mean May 27, 2011, and every four week anniversary thereof. | ¶¶ 6(a) - (c), 7(e) |

K&E 18927954.8

| Material Terms | Summary of Material Terms | Paragraph of Interim Order |
|---|---|---|
| | Any expenditures of Cash Collateral that are approved by any order of this Court may be made only if such expenditures are (i) permitted to be made pursuant to the Interim Order or (ii) otherwise are accounted for and covered by the Budget or (iii) for Non-Conforming Use approved with the prior written consent of the Prepetition Agent. If such written consent is given by the Prepetition Agent, the Debtors shall be authorized pursuant to the Interim Order to expend Cash Collateral for such Non-Conforming Use without further order of the Court, and the Prepetition Secured Parties shall be entitled to all of the protections set out in the Interim Order with respect to such Non-Conforming Use (giving effect to the permitted variance therefrom referred to in paragraph 6(a)(1) of the Interim Order). | |
| | The Debtors shall not make any payment, transfer of inventory or other financial support to any non-debtor subsidiaries in excess of $500,000, except (i) as expressly set forth in the Budget or (ii) with the prior written consent of the Prepetition Agent; provided, however, that any transfer of inventory or other financial support by the Debtors to any non-debtor subsidiaries as provided in the Interim Order shall be made only as an intercompany loan (containing specific provisions for repayment and other terms) and the Prepetition Agent shall receive prior written notice thereof, including without limitation, the terms of the intercompany loan. | |
| | In addition to the reporting requirements currently set forth in Section 6.1(c) of the Prepetition Credit Agreement, the Debtors agree to furnish to the Prepetition Agent in form reasonably satisfactory to the Prepetition Agent, no later than Friday of every other calendar week (commencing with respect to the week ending May 6, 2011): (i) an updated 26-Week Cash Flow Forecast (it being understood and agreed that any forecasts contained in each updated 26-Week Cash Flow Forecast are subject to significant uncertainties and contingencies, many of which are beyond the control of the Debtors and that no assurance can be given that such forecasts will be realized, and that the updated 26-Week Cash Flow Forecast is not a guarantee of financial performance and actual results may differ from the updated 26-Week Cash Flow Forecast and such differences may be material) and (ii) the Budget Reconciliation report, with each Budget Reconciliation report and updated 26-Week Cash Flow Forecast due one week after the conclusion of the two-week period. | |
| **Limited Reservation of Rights as to Contested Cash Collateral**<br><br>(Bankr. R. 4001(b)(1)(iii); Local R. 4001-2(a)(ii)) | None | n/a |

K&E 18927954.8

| Material Terms | Summary of Material Terms | Paragraph of Interim Order |
|---|---|---|
| **Investigation Period**<br><br>**(Bankr. R. 4001(b)(1)(iii); Local R. 4001-2(a)(ii))** | The Debtors' admissions, stipulations, agreements and releases contained in the Interim Order including, without limitation, those contained in paragraph 4 of the Interim Order shall be binding upon all other parties in interest, including, without limitation, any Committee, under all circumstances and for all purposes unless (a) any Committee or another party in interest (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) having requisite standing has timely and properly filed an adversary proceeding or contested matter (subject to the limitations contained in paragraph 14 of the Interim Order) by no later than a date that is the later of (i) in the case of a party in interest with requisite standing other than any Committee, seventy-five (75) days after the date of entry of the Interim Order, (ii) in the case of any Committee, sixty (60) days after the appointment of such Committee, (iii) any such later date agreed to in writing by the Prepetition Agent, in its sole discretion and (iv) any such later date ordered by the Court for cause shown after notice and an opportunity to be heard, <u>provided</u> that such order is entered by the Court before the termination of any applicable period as set forth in paragraph 13(a)(i)(ii) or (iii) of the Interim Order, (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Indebtedness or the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral, or (B) otherwise asserting any defenses, claims, causes of action, counterclaims or offsets against the Prepetition Agent or any of the other Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors on behalf of the Debtors' estates, and (b) a court of competent jurisdiction rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. | ¶ 13 |
| **Release of Claims**<br><br>**(Bankr. R. 4001(b)(1)(iii); Local R. 4001-2(a)(ii))** | Each Debtor forever waives and releases any and all Claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against the Prepetition Agent and each of the other Prepetition Secured Parties, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law | ¶ 4(iii) |
| **Duration of Use of Cash Collateral**<br><br>**(Bankr. R. 4001(b)(1)(iii); Local R. 4001-2(a)(ii))** | Notwithstanding anything expressly contained in the Interim Order, the Debtors' use of Cash Collateral shall cease and expire pursuant to the Interim Order (subject to any applicable notice requirements set forth below) upon the earliest to occur of (a) the effective date or consummation date of any plan of reorganization, if any, confirmed in the Cases; or (b) a Termination Event. | ¶ 11 |

K&E 18927954.8

## Jurisdiction

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.     Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

6.     The statutory bases for the relief requested herein are Sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 4001-2.

## Background

7.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently herewith, the Debtors filed a motion seeking joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).[4]

8.     As set forth in the First Day Declaration, the Debtors, the Local Insight Debtors, and the Debtors' non-Debtor affiliates and subsidiaries comprise the fifth largest Yellow Pages directory publisher in the United States and serve as a leading provider of local search advertising products and services. Specifically, Debtor Holdings wholly owns Debtor CMI, which owns (a) 60% of non-Debtor subsidiary Axesa Servicios de Información, S. en C. ("Axesa"), the leading Yellow Pages publisher in Puerto Rico and the official publisher of all telephone directories for Puerto Rico Telephone Company, Inc., the largest local exchange carrier in Puerto Rico, and (b) 100% of non-Debtor subsidiary Caribe Servicios de Información

---

[4]     Prior to the commencement of these chapter 11 cases, on November 17, 2010, 18 of the Debtors' affiliates (the "Local Insight Debtors") commenced chapter 11 cases that are currently pending and being jointly administered by this Court under the case styled, *In re Local Insight Media Holdings, Inc., et al.,* Case No. 10-13677 (KG) (the "Local Insight Chapter 11 Cases"). For background regarding the Local Insight Chapter 11 Cases, see the *Declaration of Richard C. Jenkins, the Debtors' Interim Chief Financial Officer, in Support of First Day Motions* [Docket No. 13], filed in the Local Insight Chapter 11 Cases on November 17, 2010.

K&E 18927954.8

Dominicana, S.A. ("CSID"), the sole directory publisher in the Dominican Republic with the exclusive right to publish under the brand of Codetel, the largest telecommunications operator in the Dominican Republic. CSID also provides certain essential back-office support and other services to Axesa and certain of the Local Insight Debtors.

9.      Holdings and CMI (as successor to CII Acquisition Corp.), as borrower, are parties to that certain $165,000,000 Credit Agreement, dated March 31, 2006, with Lehman Brothers Inc. and Banc of America Securities LLC, as joint lead arrangers and joint bookrunners, Bank of America, N.A., as syndication agent, Wachovia Bank, National Association, as documentation agent, Cantor Fitzgerald Securities ("Cantor" or the "Prepetition Agent"), as administrative agent,[5] and the Prepetition Secured Lenders (as amended, modified and supplemented from time to time, the "Prepetition Credit Agreement"). As of the Petition Date, the Debtors owe approximately $127 million on account of principal due under the Prepetition Credit Agreement.

10.      In addition, CMI (as successor to CII Acquisition Corp.) and WCAS Capital Partners IV, L.P. are parties to that certain Senior Subordinated Notes Purchase Agreement the ("Senior Subordinated Notes"), dated March 31, 2006, pursuant to which CMI issued $45,000,000 in 10% senior subordinated notes to WCAS Capital Partners IV, L.P. (the "Senior Subordinated Noteholder") with a maturity date of March 31, 2014.[6] As of the Petition Date,

---

[5]     Pursuant to that certain Resignation, Waiver, Consent, Amendment and Appointment Agreement, dated on or about April 4, 2011, by and among CMI, certain CMI affiliates as guarantors, Cantor, in its capacity as successor agent, Lehman Commercial Paper Inc. ("Lehman") and each of the lenders signatory thereto, Cantor succeeded Lehman as administrative agent under the Senior Secured Credit Facility.

[6]     Pursuant to a letter agreement from the Senior Subordinated Noteholder, dated May 29, 2009, the Senior Subordinated Noteholder agreed, pursuant to section 3.01(b)(ii) of the Senior Subordinated Notes Purchase Agreement, to convert all accrued interest due and payable under the Senior Subordinate Notes starting on October 1, 2009 from 10% cash interest to 12% PIK interest.

K&E 18927954.8

CMI owes approximately $57 million on account of principal due under the Senior Subordinated Notes.

11.     Since November 2010, the Debtors have engaged in discussions and negotiations with counsel and advisors for the Agent and the Senior Subordinated Noteholder regarding the terms of a comprehensive restructuring. Although the parties were unable to reach consensus and commence these chapter 11 cases pursuant to a lock-up and support agreement, they believe they are close to achieving a consensual reorganization.

## The Debtors' Prepetition Capital Structure

**A.     Prepetition Credit Agreement**

12.     At issuance, the Prepetition Credit Agreement consisted of term loans in the aggregate amount of $155 million and revolving credit loans, including swing line loans and letters of credit, in the aggregate amount of $10 million. As of the Petition Date, the Debtors owe approximately $127 million under the Prepetition Credit Agreement, of which approximately $120 million is on account of principal due under the term loan component and approximately $7 million is due on account of principal under the revolver component.

13.     The Prepetition Credit Agreement is guaranteed in accordance with that certain Guarantee and Collateral Agreement (the "Guarantee Agreement"), dated as of March 31, 2006, by and among Holdings, CMI (as successor to Holdings Acquisition) and certain of its subsidiaries in favor of Cantor (as successor to Lehman). Under the Guarantee Agreement, Holdings, CMI and non-Debtor subsidiaries Caribe Dominicana I, LLC, Caribe Dominicana II, LLC, Caribe Dominicana III, LLC, Caribe Dominicana IV, LLC, Caribe Dominicana V, LLC, and Caribe Dominicana VI, LLC (collectively, "Caribe Dominicana"), and CSID guaranteed the obligations under the Prepetition Credit Agreement.

K&E 18927954.8

14.    Obligations under the Prepetition Credit Agreement are secured pursuant to (a) that certain Collateral Agreement (the "CMI Collateral Agreement"), dated as of March 31, 2006, by CMI (as successor to Holdings Acquisition) and certain of its subsidiaries in favor of Cantor, as administrative agent (as successor to Lehman) and (b) that certain Collateral Agreement (the "Holdings Collateral Agreement," and together with the CMI Collateral Agreement, the "Collateral Agreements"), dated as of March 31, 2006, by Holdings, CMI (as successor to Holdings Acquisition) and certain of its subsidiaries in favor of Cantor, as administrative agent (as successor to Lehman).    The grantors under each of the Collateral Agreements granted to Cantor a valid, perfected, first priority security interest in each such entity's Collateral (as defined in the Collateral Agreements).

**B.    Senior Subordinated Notes**

15.    In connection with the issuance of the Senior Subordinated Notes, the noteholders, CMI, and Cantor, as administrative agent under the Prepetition Credit Agreement (as successor to Lehman), entered in that certain Subordinated Note Intercreditor and Subordination Agreement (the "Intercreditor and Subordination Agreement"), dated March 31, 2006. Under the Intercreditor and Subordination Agreement, the Senior Subordinated Notes are subordinate and junior in right of payment to the obligations under the Prepetition Credit Agreement.

**Basis for Relief**

**A.    The Debtors' Request to Use Cash Collateral**
**and the Proposed Adequate Protection are Appropriate.**

16.    Section 363 of the Bankruptcy Code generally governs the use of estate property. Section 363(c)(2)(B) permits the use of cash collateral either on a consensual basis or as authorized by the Court after notice and a hearing.    Section 363(e) provides for adequate

13

protection of interests in property. While section 361 provides examples of forms of adequate protection—such as granting replacement liens and administrative claims—courts decide what constitutes sufficient adequate protection on a case-by-case basis. See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994); In re N.J. Affordable Homes Corp., No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); see also In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Dynaco Corp., 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy, § 361.01[1] at 361-6 (15th ed. 1993) (what constitutes adequate protection is not defined, and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

17.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of the debtor's use. See In re Delta Res., Inc., 54 F.3d 722, 730 (11th Cir. 1995) (holding that "an oversecured creditor's interest in property which must be adequately protected encompasses the decline in value only . . . ."); In re Carbone Cos., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); see also In re Cont'l Airlines, Inc., 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for 363 use of collateral limited to use-based decline in value). In ruling whether a creditor is adequately protected early in a case, courts "will generally permit the business operation to continue, at least to the point of plan formulation, if the debtors make a solid evidentiary showing to support their projections . . . ." In re Dynaco, 162 B.R. at 395.

18.     Consistent with these requirements, courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and

K&E 18927954.8

thus maximize the value of an estate for all interested parties. See, e.g., In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1020 (11th Cir. 1984) (allowing debtor to use cash collateral without secured creditor's consent after noting that "[w]ithout the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated"); In re O'Connor, 808 F.2d 1393, 1399 (10th Cir. 1987) (permitting debtor to use cash collateral to expand operations after finding there was only a low risk that secured creditor's interest would diminish); In re Stein, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982) (in granting cash collateral motion, noting that access to cash is necessary for a debtor to operate its business); see also In re Megan-Racine Assocs. Inc., 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996) (noting, in connection with motion to approve use of cash collateral, that "[w]hat is important at this juncture in the case in any determination of additional adequate protection is the future stability of the value of the Collateral, rather than any particular level of value at any one time since the case was commenced").

19.     Furthermore, courts in and outside this district have established that a creditor is adequately protected for the use of cash collateral during the bankruptcy proceeding if the value of the collateral does not diminish through the date of confirmation and a debtor can operate profitably postpetition. See, e.g., In re Pursuit Athletic Footwear, Inc., 193 B.R. 713, 716 (Bankr. D. Del. 1996) (finding adequate protection where, even though debtor failed to operate profitably prepetition, postpetition projections showed a positive cash flow and profitability); Carbone, 395 B.R. at 636 (finding adequate protection where debtors established that postpetition projections showed positive net cash flow increases and profitability); In re Newark Airport/Hotel Ltd. Ptnshp., 156 B.R. 444, 450 (Bankr. D.N.J. 1993) (finding adequate protection where debtor showed market had bottomed out and would slowly improve, projections

15

established that room rates and occupancy would increase and hotel was "likely increasing in value as time passes").

20.     For instance, in <u>Pursuit Athletic</u>, 193 B.R. at 716, the court found that a creditor was adequately protected where the debtor showed it was operating profitably during the postpetition period. While the creditor argued that the debtor's inability to operate profitably prepetition undercut the reliability of the debtor's postpetition projections, the court found the postpetition projections credible in light of the debtors' lowered expenses and a cost-saving change of supplier. <u>Id</u>. at 717.

21.     Likewise, in the matter of <u>Carbone</u>, the court overruled a secured lender's objection to the use of cash collateral absent periodic cash payments where the debtors presented sufficient evidence to show that, by using cash collateral, the debtors expected to generate positive cash flow and there was no evidence of diminution of the lenders' interest in cash collateral. 395 B.R. at 636-37. And to the extent of any diminution, the court found that the secured lender was adequately protected through the debtors' offer of postpetition replacement liens. <u>Id</u>. at 637; <u>see also</u> In re Dynaco Corp., 158 B.R. 552, 553-54 (Bankr. D.N.H. 1993) (approving interim order authorizing debtors' use of cash collateral for payment of employees' wages and other normal business expenses in exchange for replacement lien where debtors indicated use of cash collateral was necessary "to prevent a closing down of the business operation")

22.     In fact, courts have found that a showing of positive postpetition cash flow is sufficient for adequate protection even in light of postpetition decline in collateral value. In <u>Dynaco</u>, the court found that a creditor was adequately protected despite a postpetition deterioration in collateral value due to temporarily negative cash flow. 162 B.R. at 395-96. The

16

court noted that the decline in collateral was caused by a planned prepetition consolidation of the debtors' manufacturing plants, a move which the debtors and creditor had agreed was necessary to reduce the debtors' operating costs and preserve the debtors' customer base. Id. Because the court found that the debtors could operate their business on "a break-even basis"—and thus their continued operation of the business posed no serious danger of a long-term decline in the level of the collateral—the court did not require the debtors to provide additional adequate protection in the form of cash payments. Id. at 396. In doing so, the court recognized that cash collateral is subject to fluctuation as incoming revenues and cash will vary on a day-to-day basis:

> The appropriate view of a relevant period for th[e] purpose [of determining adequate protection] is not a 'snapshot' showing a fluctuation downward, during one selected short period of the business operation, but rather a 'motion picture' showing the cycling of soft collateral during a period long enough to evaluate the question of whether the secured creditor is or is not being exposed to a substantial danger of a permanent decline in the level of the soft collateral supporting its floating lien. If the debtors make a solid showing that their continued operation of their business during the relevant period will pose no serious danger of such a decline, there is no need for any additional adequate protection in terms of 'new money' to be infused into the enterprise . . . to protect the secured creditor's present position in the collateral.

Dynaco, 162 B.R. at 394-95.

23.     In this case, the Court need look no further than the Debtors' current cash position and anticipated cash flows. As of May 1, 2011, the Debtors held more than $1.3 million in unrestricted cash. The Debtors' projected 26-week cash flow ending the week of October 23, 2011 projects that the Debtors will have positive cash flow during the 26-week reporting period. Specifically, even in light of the Debtors' anticipated professional fees related to the Chapter 11 Cases, these projections show a net positive cash flow of approximately $5.4 million. Not only does this positive operational cash flow demonstrate a sufficient cushion to protect the

17

Prepetition Secured Lenders' interests in the Cash Collateral, but it demonstrates the need for the Debtors to use Cash Collateral in order to meet these projections.

24.     These numbers show that, while the Debtors must restructure their balance sheet, they otherwise anticipate achieving healthy results postpetition and, as a result, the Prepetition Secured Parties are "not being exposed to a substantial danger of a permanent decline in the level of [their collateral]." See Dynaco, 162 B.R. at 394. This holds especially true where, as described directly below, the Debtors will grant replacement liens to the extent of any diminution in the Prepetition Agent's collateral. Id. at 396 (finding adequate protection where notwithstanding a postpetition decline in collateral, debtors showed that they would reach projected sales through effective cost-cutting, quality control and increased efficiency measures and could operate on a break-even basis); see also Carbone, 395 B.R. at 636-37 (where debtor showed that use of collateral would generate positive cash flow, finding that replacement liens were sufficient to provide adequate protection). Accordingly, the Debtors' request to use the Cash Collateral and the proposed adequate protection are appropriate.

**B.     The Proposed Adequate Protection
         For the Prepetition Agent and Senior Secured Lenders**

25.     As already discussed, the Prepetition Agent has consented to the Debtors' use of Cash Collateral on the terms set forth in the Interim Order. The Prepetition Agent's adequate protection includes the following, among other terms:

26.     First, the Prepetition Agent (for itself and for the benefit of the Prepetition Secured Parties) will receive valid, perfected replacement security interests in and liens (the "Adequate Protection Liens") upon all prepetition and postpetition assets and property of the Debtors of any kind or nature whatsoever, now owned or hereafter acquired, and all proceeds of such proceeds, rents, products, and profits, including, without limitation, subject to entry of the

18

Final Order, the proceeds or property recovered in respect of Causes of Action including the Collateral, subject and subordinate only to (y) valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (z) the Carve Out. Second, the Debtors will provide the reporting set forth in Paragraph 7(e).

27.     Considered in the context of the Debtors' current and projected cash position, the proposed adequate protection assures that the filing of these bankruptcy cases does not harm the position of the Prepetition Agent and the Prepetition Secured Lenders.[7]

## C. Failure to Use the Cash Collateral Within 15 Days of the Petition Date Would Cause Immediate and Irreparable Harm.

28.     Pursuant to Bankruptcy Rule 4001(b)(2), the Court may conduct an expedited preliminary hearing on this Motion—sooner than 15 days after the Motion's filing—and authorize the use of cash collateral. See also Fed. R. Bankr. P. 6003.

29.     The Debtors have an immediate postpetition need for the use of Cash Collateral. Specifically, subject to the terms of the Interim Order, the Debtors seek to make any payments necessary to support their non-Debtor subsidiaries. In addition, the Debtors seek to pay in the ordinary course of business any general unsecured claims as they become due. Such general unsecured claims represent obligations the Debtors incurred to unsecured creditors who provide

---

[7]     Moreover, courts in this district have granted similar relief in other recent chapter 11 cases. See, e.g., In re The Majestic Star Casino, LLC, No. 09-14136 (KG) (Bankr. D. Del. Nov. 23, 2009), In re Monaco Coach Corp., No. 09-10750 (KJC) (Bankr. D. Del. Mar. 10, 2009) (interim order); In re Spansion Inc., No. 09-10690 (KJC) (Bankr. D. Del. Mar. 4, 2009) (interim order); In re Muzak Holdings LLC, No. 09-10422 (KJC) (Bankr. D. Del. Feb. 12, 2009) (interim order); In re Hawaiian Telcom Comm'ns, Inc., No. 08-13086 (PJW) (Bankr. D. Del. Dec. 3, 2008); In re DBSI, Inc., No. 08-12687 (PJW) (Bankr. D. Del. Dec. 8, 2008); In re Intermet Corp., No. 08-11859 (KG) (Bankr. D. Del. Sept. 19, 2008) (amended Nov. 14, 2008); In re Tropicana Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008). Because of the voluminous nature of the orders cited herein, they are not attached to the Motion. Copies of these orders are available on request of the Debtors' counsel.

K&E 18927954.8

legal, financial, and other services that support the Debtors' continued operation. Without ready access to Cash Collateral, such parties would not be paid, and the Debtors' business would be negatively impacted. Recognizing the Debtors' need for cash and the negative consequences that would result without access to cash, the Prepetition Agent expressly consented to the Debtors' use of Cash Collateral for these purposes pursuant to the Interim Order. Furthermore, the Debtors have satisfied their burden of showing that the Prepetition Secured Lenders' interest in Cash Collateral is adequately protected.

30.     The Debtors' ability to finance their operations and the availability to the Debtors of sufficient working capital and liquidity through the use of Cash Collateral is vital to the preservation and maintenance of the going-concern value and other values of the Debtors' estates. The Debtors, therefore, seek immediate authority to use the Cash Collateral as set forth in the Motion and in the Interim Order to prevent immediate and irreparable harm to the Debtors' estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(c).

31.     Accordingly, to the extent that the Debtors require the use of Cash Collateral, the Debtors submit that they have satisfied the requirements of Bankruptcy Rules 4001 and 6003 to support an expedited preliminary hearing and immediate Cash Collateral availability.

## Request for Final Hearing

32.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than twenty-one (21) days after entry of the Interim Order, as required in the Interim Order, and fix the time and date prior to the Final Hearing for parties to file objections to the Motion.

## Notice

33.     Notice of the first day hearing on this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee

20

for the District of Delaware; (b) the Prepetition Agent; (c) Kaye Scholer, LLP, as counsel to the Prepetition Agent; (d) the Senior Subordinated Noteholder; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) the Office of the United States Attorney General for the State of Delaware.

34.     Following the first day hearing in these chapter 11 cases, this Motion and any order entered on this Motion shall be provided to: (a) the foregoing parties; (b) those persons who request notice pursuant to Bankruptcy Rule 2002; and (c) any other persons as required under Local Bankruptcy Rule 9013-1(m). In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

35.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form annexed hereto as Exhibit A, granting the relief requested herein and such other and further relief as is just and proper.

Dated: May 3, 2011
Wilmington, Delaware

/s/ Laura Davis Jones

Laura Davis Jones (Bar No. 2436)
Michael R. Seidl (Bar No. 3889)
Curtis A. Hehn (Bar No. 4264)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400

- and -

Richard M. Cieri (*pro hac vice* pending)
Christopher J. Marcus (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

Ross M. Kwasteniet (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Proposed Attorneys for the
Debtors and Debtors in Possession

22