**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CARIBE MEDIA, INC., <u>et al.</u>,[1] | ) Case No. 11-11387 (KG) |
|  | ) |
| Debtors. | ) Jointly Administered |
|  | ) |
|  | ) **Related to Docket No. 220** |

## ORDER CONFIRMING THE AMENDED JOINT CHAPTER 11 PLAN OF CARIBE MEDIA, INC., <u>ET AL.</u>

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") having:[2]

    a.    commenced, on May 3, 2011 (the "<u>Petition Date</u>"), these chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>");

    b.    operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code during the Chapter 11 Cases;

    c.    filed, on August 18, 2011, the *Joint Chapter 11 Plan of Caribe Media, Inc., et al.* [Docket No. 170] (as amended, the "<u>Plan</u>") and the *Disclosure Statement for the Joint Chapter 11 Plan of Caribe Media, Inc., et al.* [Docket No. 171] (as amended, the "<u>Disclosure Statement</u>"), which documents were subsequently amended and modified, as described herein;

    d.    filed, on August 18, 2011, the *Motion of Caribe Media, Inc., et al., for Entry of an Order Approving (A) the Disclosure Statement; (B) the Voting Record Date, Voting Deadline, and Other Dates; (C) Procedures for Soliciting, Receiving, and*

---

[1] The Debtors, together with the last four digits of each Debtors' federal tax identification number (if applicable), are: Caribe Media, Inc. (9005) and CII Acquisition Holding Inc. The service address for the Debtors is: 160 Inverness Drive West, Suite 400, Englewood, CO 80112.

[2] All capitalized terms used but not defined herein have the meanings set forth in the Plan, Disclosure Statement, or Disclosure Statement Order, as applicable (each as defined herein).

K&E 20360560

*Tabulating Votes on the Plan and for Filing Objections to the Plan; and (D) the Manner and Forms of Notice and Other Related Documents* [Docket No. 172];

e.  filed on September 13, 2011, the *Motion of Caribe Media, Inc., et al., for Entry of an Order Approving (A) the Transition Agreement Term Sheet; (B) the Rejection of the Management Services Agreement; and (C) Entry Into the Management Transition Agreement* [Docket No. 193];

f.  filed, on September 15, 2011, a revised version of the Plan [Docket No. 204] and a revised version of the Disclosure Statement [Docket No. 206];

g.  filed, on September 21, 2011, the solicitation version of the Plan [Docket No. 220] and the solicitation version of the Disclosure Statement [Docket No. 221];

h.  filed, on September 21, 2011, the *Notice of Hearing to Consider Confirmation of the Amended Joint Chapter 11 Plan of Caribe Media, Inc., et al., and Related Voting and Objection Deadlines* (the "Confirmation Hearing Notice") [Docket No. 222];

i.  distributed solicitation materials beginning on or about September 23, 2011, consistent with the Bankruptcy Code, the Bankruptcy Rules, and the *Order Approving (A) the Disclosure Statement; (B) the Voting Record Date, Voting Deadline, and Other Dates; (C) Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan; and (D) the Manner and Forms of Notice and Other Related Documents* [Docket No. 213] (the "Disclosure Statement Order"), including the solicitation procedures (the "Solicitation Procedures") and related notices, forms, and ballots (collectively, the "Solicitation Packages") approved by the Disclosure Statement Order, as evidenced by the *Affidavit of Service of Michael J. Paque re: Solicitation Packages for the Amended Joint Chapter 11 Plan of Caribe Media, Inc., et al.* [Docket No. 228] (the "KCC Solicitation Affidavit");

j.  published, on September 28, 2011, the Confirmation Hearing Notice in *USA Today (National Edition)*, consistent with the Disclosure Statement Order, as evidenced by the *Affidavit of Publication of Oxana Harris in USA Today* [Docket No. 226] (the "Publication Affidavit");

k.  filed, on October 24, 2011, the *Plan Supplement to the Amended Joint Chapter 11 Plan of Caribe Media, Inc., et al.* [Docket No. 256] (as may be amended and supplemented, the "Plan Supplement");

l.  filed, on October 29, 2011, the *Certification of Michael J. Paque with Respect to the Tabulation of Votes on the Amended Joint Chapter 11 Plan of Caribe Media, Inc., et al.* [Docket No. 260] (the "Voting Report"), which details the results of the Plan voting process;

m.    filed on October 26, 2011, the *Affidavit of Service of Shakira L. Ferguson regarding Plan Supplement for the Amended Joint Chapter 11 Plan of Caribe Media, Inc., et al.* [Docket No. 257];

n.    filed, on November 1, 2011, the *Debtors' Memorandum of Law in Support of Confirmation of Amended Joint Chapter 11 Plan of Caribe Media, Inc., et al.* [Docket No. 264] (the "Confirmation Brief"), which included, among other things, the *Declaration of Scott Brubaker in Support of Confirmation of Amended Joint Chapter 11 Plan of Caribe Media, Inc., et al.* (the "Brubaker Declaration").

The Bankruptcy Court (the "Court") having:

o.    entered, on September 20, 2011, the *Order Approving (A) the Transition Agreement Term Sheet; (B) the Rejection of the Management Services Agreement; and (C) Entry Into the Management Transition Agreement* [Docket No. 212], which, among other things, approved a transition agreement term sheet and authorized the Debtors to enter into definitive documentation consistent therewith;

p.    entered, on September 20, 2011, the Disclosure Statement Order;

q.    set November 3, 2011 at 1:00 p.m., prevailing Eastern time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

r.    reviewed the Plan, the Disclosure Statement, the Confirmation Brief, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation;

s.    heard the statements and arguments made by counsel in respect of Confirmation;

t.    considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation; and

u.    taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing, the Plan, and all modifications thereto have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions completed thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation

K&E 20360560

thereon and good cause appearing therefor, the Court hereby makes and issues the following

Findings of Fact, Conclusions of Law, and Order:[3]

## I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED
THAT:

**A.     Jurisdiction and Venue.**

1.     On the Petition Date, the Debtors commenced the Chapter 11 Cases in this Court.
Venue in this Court was proper as of the Petition Date with respect to the Debtors pursuant to 28
U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C.
§ 157(b)(2). The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.
§ 1334. The Court has exclusive jurisdiction to determine whether the Plan complies with the
applicable provisions of the Bankruptcy Code and should be confirmed.

**B.     Eligibility for Relief.**

2.     The Debtors were and are entities eligible for relief under section 109 of the
Bankruptcy Code.

**C.     Commencement and Joint Administration of the Chapter 11 Cases.**

3.     On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing
voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. By prior
order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only
and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 48]. The

---

[3]    The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings of fact and
conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to
Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation
Hearing in relation to Confirmation are hereby incorporated herein to the extent not inconsistent herewith. To
the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To
the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Debtors have operated their businesses and managed their properties as debtors in possession since the Petition Date pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

**D.    Plan Supplement.**

4.    On October 4, 2011, the Debtors filed the Plan Supplement, which contains the following: (a) the form of Exit Facility Credit Agreement; (b) the Schedule of Non-Released Parties; (c) the form of Reorganized Caribe By-Laws; (d) the form of Reorganized Caribe Charter; (e) the form of Stockholders' Agreement; (f) the form of Transition Agreement and certain agreements attached as exhibits thereto; (g) the Schedule of Retained Causes of Action; (h) the form of Release, Waiver, and Covenant Not to Sue (in accordance with Section 9.1(i) of the Plan); and (i) the form of Release, Waiver, and Covenant Not to Sue (in accordance with Section 9.1(k) of the Plan). All materials in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required.

**E.    Modifications to the Plan.**

5.    After entry of the Disclosure Statement Order, the Debtors made certain modifications to the Plan for purposes of preparing the Plan for Solicitation. Any and all modifications to the Plan since the entry of the Disclosure Statement Order are consistent with the provisions of the Bankruptcy Code, including sections 1122, 1123, 1125, and 1127. None of the modifications made since the entry of the Disclosure Statement Order affects a materially adverse change in the treatment of any holder of a Claim or Interest under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019,

these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The solicitation version of the Plan, filed on September 21, 2011, and attached hereto as <u>Exhibit A</u>, constitutes the Plan submitted for Confirmation.

**F.      Judicial Notice.**

6.      The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of these Chapter 11 Cases, maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan or Confirmation are hereby overruled on the merits.

**G.      Disclosure Statement Order and Solicitation Procedures.**

7.      On September 20, 2011, the Court entered the Disclosure Statement Order, which among other things: (a) approved the Disclosure Statement in the form attached to the Disclosure Statement Order as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) fixed September 20, 2011, as the Voting Record Date; (c) fixed October 27, 2011 at 5:00 p.m., prevailing Pacific time, as the deadline for voting to accept or reject the Plan (the "<u>Voting Deadline</u>"); (d) fixed October 27, 2011 at 5:00 p.m., prevailing Eastern time, as the deadline for objecting to the Plan; (e) fixed November 3, 2011 at 1:00 p.m., prevailing Eastern time, as the date and time for the

6

commencement of the Confirmation Hearing; (f) approved the Solicitation Procedures and the form of the Solicitation Packages; and (g) approved the form and method of notice of the Confirmation Hearing Notice set forth therein.

**H.      Transmittal and Mailing of Materials; Notice.**

8.      In accordance with the Bankruptcy Rules and as evidenced by the KCC Solicitation Affidavit, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given, without limitation, to: (a) the U.S. Trustee; (b) counsel to the Senior Secured Credit Facility Administrative Agent; (c) counsel to the Senior Subordinated Noteholder; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the Office of the Attorney General for the State of Delaware; (g) those parties who have requested notice pursuant to Bankruptcy Rule 2002; and (h) all known creditors not included above, in substantial compliance with the Solicitation Procedures and Bankruptcy Rules 2002(b), 3017, and 3020(b), and no other or further notice is or shall be required. Adequate and sufficient notice of the Confirmation Hearing, and any applicable dates, deadlines, and hearings described in the Solicitation Procedures has been given and no other or further notice is or shall be required.

9.      The Debtors published the Confirmation Hearing Notice in *USA Today* (National Edition), in compliance with the Disclosure Statement Order and Bankruptcy Rule 2002(l), as evidenced by the Publication Affidavit, and no other or further notice is or shall be required.

**I.      Solicitation.**

10.      Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017

and 3018, the Disclosure Statement Order, the Solicitation Procedures, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

11.     Specifically, the Solicitation Packages (which included the Disclosure Statement, the Plan, the form of ballots, and related notices), the form of which was approved by the Court in the Disclosure Statement Order, were transmitted to and served on all holders of Claims in Class 2—the only Class entitled to vote.   The relevant portions of the Solicitation Packages and other notices approved by the Disclosure Statement Order were transmitted to and served on other parties in interest in the Chapter 11 Cases.   All transmissions were in compliance with section 1125 of the Bankruptcy Code, the Disclosure Statement Order, the Solicitation Procedures, and the Bankruptcy Rules.   Transmittal and service were adequate and sufficient, and no further notice is or shall be required.

## J.     Voting Report.

12.     The Debtors filed the Voting Report before the commencement of the Confirmation Hearing, consistent with the Solicitation Procedures.   All procedures used to tabulate ballots received in connection with Confirmation (as defined in the Solicitation Procedures) were appropriate and tabulation was conducted in accordance with the Solicitation Procedures, as evidenced by the KCC Solicitation Affidavit.

13.     As set forth in the Plan and the Disclosure Statement, holders of Claims in Class 2 (the "Voting Class") were eligible to vote on the Plan.   As evidenced by the Voting Report, the Voting Class voted to accept the Plan (the "Impaired Accepting Class").   In addition, holders of Claims in Classes 1 and 4 (collectively, the "Presumed Accepting Classes") are unimpaired and presumed to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code. Holders of Claims in the Presumed Accepting Classes, therefore, are not entitled to vote to accept or reject the Plan.

K&E 20360560

14.     As set forth in the Plan and the Disclosure Statement, holders of Claims and Interests in Classes 3, 5, and 6 (collectively, the "Deemed Rejecting Classes") are fully impaired and are deemed to reject the Plan in accordance with section 1126(g) of the Bankruptcy Code. Holders of Claims and Interests in the Deemed Rejecting Classes, therefore, are not entitled to vote to accept or reject the Plan.

15.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

**K.     Burden of Proof.**

16.     The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

**L.     Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

17.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows.

**i.     Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

18.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

**a.     Sections 1122 and 1123—Proper Classification.**

19.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into six

Classes.[4]  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not done for any improper purpose.  The creation of such Classes does not unfairly discriminate between or among holders of Claims or Interests.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code have been satisfied.

**b.**     **Section 1123(a)(2)—Specification of Unimpaired Classes.**

20.     Article III of the Plan specifies that Claims and Interests, as applicable, in Classes 1 and 4 are Unimpaired under the Plan.  Additionally, Article II of the Plan specifies that Administrative Claims, Professional Claims, and Priority Tax Claims are unimpaired, although these claims are not classified under the Plan.    Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

**c.**     **Section 1123(a)(3)—Specification of Treatment of Impaired Classes.**

21.     Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including with respect to Classes 3, 5, and 6.  Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

**d.**     **Section 1123(a)(4)—No Discrimination.**

22.     In accordance with section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan uniformly provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the holder of a particular Claim has agreed to a less favorable treatment

---

[4]    Administrative Claims, Professional Claims, and Priority Tax Claims are addressed in Article II of the Plan, and are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code.

with respect to such Claim. Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

### e. Section 1123(a)(5)—Adequate Means for Plan Implementation.

23. In accordance with section 1123(a)(5) of the Bankruptcy Code, the provisions in Article IV and elsewhere in the Plan and the Plan Supplement provide, in detail, adequate and proper means for the Plan's implementation, including, without limitation, with respect to: (a) the continued corporate existence of the Debtors; (b) the consummation of the Restructuring Transactions; (c) the taking of all corporate actions necessary to effectuate the Plan, such as the appointment of the directors and officers of Reorganized Caribe and the distribution of the Reorganized Caribe Common Stock; (d) the adoption and filing of the Reorganized Caribe By-Laws and the Reorganized Caribe Charter (the "New Organizational Documents"); (e) entry into, and the incurrence of new indebtedness under, the Exit Facility Credit Agreement;[5] (f) cancellation of existing securities and agreements; (g) adoption and implementation of the Management Equity Incentive Program; (h) identification of sources of consideration from which the Debtors will make distributions under the Plan; and (i) preservation of certain of the Debtors' Causes of Action. Also, Reorganized Caribe will have, on the Effective Date, sufficient cash to make all payments required to be made on or after the Effective Date pursuant to the terms of the Plan. The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

---

[5] All references to the "Exit Facility Credit Agreement" in this Order refer to the form of exit facility agreement filed as Exhibit A of the Plan Supplement.

11

    **f.**   **Section 1123(a)(6)—Voting Power of Equity Securities.**

  24.  Section 4.9 of the Plan provides that the New Organizational Documents will prohibit the issuance of non-voting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

    **g.**   **Section 1123(a)(7)—Designation of Directors and Officers.**

  25.  Section 4.12 of the Plan and the New Organization Documents describe the manner of selection of directors and officers of Reorganized Caribe following the Effective Date. Such provisions are entirely consistent with the interests of creditors, equity security holders, and public policy. Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code has been satisfied.

    **h.**   **Section 1123(b)—Discretionary Contents of the Plan.**

  26.  The Plan contains various provisions that are not required for Confirmation. These provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with other applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

    *(i)*   *Section 1123(b)(1)-(2)—Claims and Executory Contracts.*

  27.  In accordance with sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, and Article V of the Plan provides for the assumption of the Debtors' Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected during the Chapter 11 Cases under section 365 of the Bankruptcy Code.

K&E 20360560

### (ii) Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Actions.

#### (A) Settlements Necessary to the Plan.

28.     In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan is in the best interests of the Debtors, their Estates, and all holders of Claims and Interests, and is fair, equitable, and reasonable.

#### (B) Debtors' Releases, Third-Party Releases, Exculpation, Plan Injunction, and Retained Causes of Action.

29.     **Releases by the Debtors.** The release and discharge of Claims and Causes of Action by the Debtors, Reorganized Caribe, and the Estates is described in Section 8.2 of the Plan (the "Debtors' Releases"). The Debtors' Releases release the Released Parties and are a necessary and important aspect of the Plan. Certain of the Debtors' Releases are required under the Transition Agreement. The Released Parties include each of the following in its capacity as such: (a) the Debtors; (b) if the Transition Agreement is effective and binding on each party thereto on or prior to the Effective Date, the Local Insight Companies; (c) the Senior Secured Credit Facility Lenders and the Senior Secured Credit Facility Administrative Agent; (d) the Senior Subordinated Noteholder; (e) the Non-Debtor Subsidiaries; (f) if the Transition Agreement is effective and binding on each party thereto on or prior to the Effective Date, Ambac Assurance Corporation; (g) the WCAS Releasees; and (h) with respect to each of the

13

foregoing Entities in clauses (a) through (f), such Entity's successors and assigns and current and former affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals.

30.    The Debtors have satisfied the business judgment standard with respect to the Debtors' Releases. The Debtors' Releases are fair, reasonable, and in the best interests of the Debtors, their Estates, and creditors. Further, the Debtors' Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by section 8.2 of the Plan; (3) given and made after due notice and opportunity for hearing; and (4) a bar to any of the Debtors asserting any Claim or Cause of Action released by Section 8.2 of the Plan.

31.    **Third-Party Releases by Holders of Claims and Interests.** The releases of Claims and Causes of Action by holders of Claims and Interests solely in their capacities as Releasing Parties as described in Section 8.3 of the Plan (the "Third-Party Releases") are an important aspect of the Plan. The Releasing Parties include each of the following in its capacity as such: (a) the Senior Secured Credit Facility Lenders and the Senior Secured Credit Facility Administrative Agent; (b) the Senior Subordinated Noteholder; (c) if the Transition Agreement is effective and binding on each party thereto on or prior to the Effective Date, the Local Insight Companies; (d) the WCAS Releasees; (e) the Non-Debtor Subsidiaries; (f) if the Transition Agreement is effective and binding on each party thereto on or prior to the Effective Date, Ambac Assurance Corporation; and (g) each holder of a Claim or Interest other than a holder of a Claim or Interest that has voted to reject the Plan or a member of a Class that is deemed to reject the Plan.

K&E 20360560

32.     Certain of the Third-Party Releases are required under the Transition Agreement. Further, the Third-Party Releases provide finality for the Debtors, Reorganized Caribe, and the Released Parties regarding the parties' respective obligations under the Plan.  The Confirmation Hearing Notice and the Ballots sent to all holders of Impaired Claims entitled to vote on the Plan unambiguously stated that the Plan contained releases.  The Third-Party Releases are fair, equitable, and reasonable, and are in the best interests of the Debtors and all holders of Claims and Interests.  Further, the Third-Party Releases are also (1) in exchange for the good and valuable consideration provided by the Debtors, Reorganized Caribe, the Estates, and the Released Parties; (2) a good faith settlement and compromise of the Claims released by Section 8.3 of the Plan; (3) given and made after due notice and opportunity for hearing; and (4) a bar to any Entity granting a release under Section 8.3 of the Plan from asserting any Claim or Cause of Action released by Section 8.3 of the Plan.

33.     **Exculpation.**     The exculpation described in Section 8.4 of the Plan (the "Exculpation") is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Each Exculpated Party has participated in these Chapter 11 Cases in good faith and is appropriately exculpated from any claim related to any postpetition act or omission in connection with, relating to, or arising out of the Debtors' in-court restructuring efforts, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement or Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of

15

property under the Plan. The Exculpation, including its carve-out for gross negligence or willful misconduct, is entirely consistent with established practice in this jurisdiction and others.

34. **Preservation of Causes of Action.** Section 4.15 of the Plan appropriately provides that Reorganized Caribe will retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

35. **Injunction.** The injunction provision set forth in Section 8.5 of the Plan (the "Injunction") is necessary to preserve and enforce the Debtors' Releases, the Third-Party Releases, and the Exculpation and is narrowly tailored to achieve this purpose.

36. **Release of Liens.** The full release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Section 8.9 of the Plan (the "Lien Release"), subject to all security interests, Liens and other encumbrances granted to secure the Senior Secured Credit Facility Claims surviving and continuing to secure Reorganized Caribe's obligations under the Exit Facility, is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

37. Based on the foregoing, each of the Debtors' Releases, the Third-Party Releases, the Exculpation, and the Injunction set forth in the Plan: (a) is within the jurisdiction of the

K&E 20360560

Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is necessary to implement the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, the Estates, and the holders of Claims and Interests; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in these chapter 11 cases with respect to the Debtors; and (f) is consistent with applicable law, including sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.

38.     The record of the Confirmation Hearing and these chapter 11 cases is sufficient to support the Lien Release, the Debtors' Releases, the Third-Party Releases, the Exculpation, and the Injunction provisions contained in Article VIII of the Plan. The failure to implement the Lien Release, the Debtors' Releases, the Third-Party Releases, the Exculpation, and the Injunction provisions of the Plan would seriously impair the Debtors' ability to confirm the Plan.

### ii.     Section 1123(d)—Cure of Defaults.

39.     Article V of the Plan provides that except as otherwise set forth in the Transition Agreement, no Cure amount will be deemed owing nor will any Cure amount be required to be paid to a counterparty to any assumed Executory Contract, including the Intercompany Contract, or any Unexpired Lease in connection with its assumption. In addition, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise will result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Accordingly, the requirements of section 1123(d) of the Bankruptcy Code are satisfied.

17

### iii. Section 1129(a)(2)—Compliance of the Debtors With the Applicable Provisions of the Bankruptcy Code.

40.     The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically the Debtors: (a) are proper debtors under section 109 of the Bankruptcy Code; (b) have complied with all applicable provisions of the Bankruptcy Code, including section 1125, except as otherwise provided or permitted by order of the Court; and (c) have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation Materials and in tabulating the votes with respect to the Plan.

### iv. Section 1129(a)(3)—Proposal of Plan in Good Faith.

41.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its Confirmation. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources. The Plan, therefore, satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

### v. Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.

42.     The procedures set forth in the Plan provide for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

### vi. Section 1129(a)(5)—The Debtors' Appointment of Post-Emergence Directors and Officers is Consistent with Public Policy (Section 1129(a)(5)).

18

43.     On the Effective Date, the terms of all officers and directors of the Debtors shall be deemed to have expired, and all such officers and directors shall be released of their respective duties. The board of directors of Reorganized Caribe shall have five members, one of whom shall be the chief executive officer of Reorganized Caribe and four of whom shall be elected by the Required Lenders. On and after the Effective Date, each officer and director of Reorganized Caribe shall serve pursuant to the terms of the Reorganized Caribe Charter, the Reorganized Caribe Bylaws, or other constituent documents, and applicable state corporation law.

44.     The Required Lenders will select the directors and officers of Reorganized Caribe on or prior to the Effective Date, which directors and officers will be disclosed in a filing with a Court.

45.     The Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code because, in the Disclosure Statement, the Plan, and the Confirmation Brief, the Debtors disclosed the manner in which officers and directors of Reorganized Caribe will be chosen following Confirmation. The method of appointment of directors and officers of Reorganized Caribe is and will be consistent with the interests of holders of Claims and Interests and public policy. Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied.

**vii.     Section 1129(a)(6)—Approval of Rate Changes.**

46.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

viii.  **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

47. The liquidation analysis attached as <u>Exhibit E</u> to the Disclosure Statement (as amended and restated, the "<u>Liquidation Analysis</u>") and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or in affidavits in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Interests in every Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

48. Specifically, the Liquidation Analysis properly: (a) estimated that the Debtors have three primary categories of assets: (i) cash and cash equivalents; (ii) the Participations; and (iii) intangible assets; (b) assumed that the Liquidation Proceeds, other Cash estimated to be held by the Debtors on the Conversion Date, and estimated Avoidance Action recoveries would be available for purposes of distributions to Creditors; and (c) assumed that, after deducting the costs of liquidation, including a Trustee's fees and expenses and other administrative expenses incurred in the liquidation, the Trustee would allocate net Liquidation Proceeds to Creditors at each Debtor entity in accordance with the priority scheme set forth in section 726 of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

ix.     **Section 1129(a)(8)—Conclusive Presumption of Acceptance
by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class.**

49.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. Classes 1 and 4 are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 2, an Impaired Class entitled to vote on the Plan, has voted to accept the Plan. Classes 3, 5, and 6 are not receiving any distributions under the Plan and are conclusively presumed to reject the Plan under section 1126(g) of the Bankruptcy Code. The Plan, therefore, does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code. Nevertheless, as discussed more fully in paragraph 56, the Plan may be confirmed because the Debtors have met the requirements of section 1129(b) of the Bankruptcy Code.

x.      **Section 1129(a)(9)—Treatment of Claims Entitled to
Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

50.     The treatment of Administrative Claims, Professional Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(9) of the Bankruptcy Code are satisfied.

xi.     **Section 1129(a)(10)—Acceptance By At Least One Impaired Class.**

51.     As set forth in the Voting Report, the Impaired Accepting Class, consisting of holders of Claims in Class 2, has voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan that has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code). Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

K&E 20360560

xii.      **Section 1129(a)(11)—Feasibility of the Plan.**

52.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in affidavits filed in connection with, the Confirmation Hearing, including, without limitation, the financial projections set forth in <u>Exhibit C</u> to the Disclosure Statement, and the terms of the proposed Exit Facility Credit Agreement set forth in the Plan Supplement: (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Reorganized Caribe or any successor to Reorganized Caribe under the Plan except as provided in the Plan; and (e) establishes that Reorganized Caribe will have sufficient funds available to meet its obligations under the Plan. Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

xiii.     **Section 1129(a)(12)—Payment of Bankruptcy Fees.**

53.     Section 12.2 of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a). The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

xiv.     **Section 1129(a)(13)—Retiree Benefits.**

54.     Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code. Section 4.13 of the Plan provides that, on and after the Effective Date, all retiree benefits, if any, shall continue to be paid in accordance with applicable

law.  Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code have been satisfied.

     **xv.**       **Section 1129(a)(14)-(16)—Non-applicability of Certain Sections.**

     55.     The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

     **xvi.**     **Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class.**

     56.     The Voting Class has voted to accept the Plan.  The Deemed Rejecting Classes consist of Impaired Classes of Claims or Interests that have not voted to accept the Plan. Notwithstanding the fact that not all Impaired Classes have voted to accept the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  Second, the Plan is fair and equitable with respect to the Deemed Rejecting Classes because no Class that is junior to the Deemed Rejecting Classes will receive or retain any property on account of the Claims or Interests in such Class.  Third, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated creditors in those Classes will receive the same treatment.  The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

     **xvii.**     **Section 1129(c)—Only One Plan.**

     57.     Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

K&E 20360560

xviii.    **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes.**

58.    No governmental unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**M.    Section 1125(e)—Good Faith Solicitation.**

59.    Based on the record in the Chapter 11 Cases, the: (a) the Debtors; (b) the Local Insight Companies; (c) the Senior Secured Credit Facility Lenders and the Senior Secured Credit Facility Administrative Agent; (d) the Senior Subordinated Noteholder; (e) the Non-Debtor Subsidiaries; (f) Ambac Assurance Corporation; (g) the WCAS Releasees; and (h) with respect to each of the foregoing Entities in clauses (a) through (f), such Entity's successors and assigns and current and former affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, and any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Section 8.4 of the Plan.

**N.    Satisfaction of Confirmation Requirements.**

60.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

K&E 20360560

**O.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

61.     Each of the conditions precedent to the Effective Date, as set forth in Section 9.1 of the Plan, has been, or will be, satisfied or waived in accordance with Section 9.2 of the Plan.

**P.     Disclosure of Facts.**

62.     The Debtors have disclosed all material facts regarding the Plan and the documents included in the Plan Supplement.

**Q.     Implementation.**

63.     All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including the Exit Facility Credit Agreement), have been negotiated in good faith, at arm's length, and are in the best interests of the Debtors and Reorganized Caribe and shall, upon completion of documentation and execution be valid, binding, and enforceable documents and agreements not in conflict with any federal or state law.

## II.     ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

**A.     Confirmation.**

64.     The Plan, including all exhibits thereto and the Plan Supplement (including the Transition Agreement), is approved in its entirety and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan and the Plan Supplement and each of the documents comprising the Plan Supplement are incorporated by reference into and are an integral part of the Plan and are hereby approved.

**B.     Objections.**

65.     All objections and all reservations of rights that have not been withdrawn, waived,

or settled pertaining to Confirmation are overruled on the merits.

## C. Omission of Reference to Particular Plan Provisions.

66. The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

## D. Plan Classification Controlling.

67. The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims in connection with voting on the Plan pursuant to the Solicitation Procedures: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors and Reorganized Caribe except for voting purposes.

## E. Administrative Claims Bar Date.

68. Except as otherwise provided in Section 2.1 of the Plan, requests for payment of Administrative Claims must be filed and served on Reorganized Caribe pursuant to the procedures specified in this Order and the notice of entry of this Order no later than 30 days after the Effective Date. Holders of Administrative Claims that are required to, but do not, file and serve a request for payment of such Administrative Claims by such date shall be forever barred, stopped, and enjoined from asserting such Administrative Claims against the Debtors or Reorganized Caribe or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be filed and served

26

on Reorganized Caribe and the requesting party no later than 120 days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order, including all Administrative Claims expressly Allowed under this Plan.

69. Reorganized Caribe may settle and pay any Administrative Claim in the ordinary course of business without any further notice to any party, and without any further notice to or action, order, or approval of the Court. In the event that any party with standing objects to an Administrative Expense Claim, the Court shall determine the Allowed amount of such Administrative Claim.

## F. General Settlement of Claims and Interests.

70. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under, or in connection with, the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. Subject to Article VI of the Plan, all distributions made pursuant to the Plan to holders of Allowed Claims and Interests in any Class are intended to be and shall be final.

## G. Distributions.

71. All distributions under the Plan shall be made in accordance with Article VI of the Plan.

## H. Corporate Action.

72. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (a) the adoption, filing of, and entry into the Reorganized Caribe By-Laws, the Reorganized Caribe Charter, and the Reorganized Caribe

27

Shareholder's Agreement; (b) the appointment of the Reorganized Caribe Board; (c) the adoption and implementation of the Management Equity Incentive Program; (d) the authorization, issuance, and distribution of Reorganized Caribe Common Stock and other Securities to be authorized, issued, and distributed pursuant to the Plan; (e) the effectuation of the Restructuring Transactions, including for purposes of addressing tax consequences, if any, relating to the transactions contemplated by the Plan; and (f) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or Reorganized Caribe, and any corporate action required by the Debtors or Reorganized Caribe in connection with implementation of the Plan shall be deemed to have occurred and shall be in effect upon the Effective Date, without any requirement of further action by the directors or officers of the Debtors or Reorganized Caribe.

**I.      Transition Agreement.**

73.      The Debtors or Reorganized Caribe, as applicable, are authorized to enter or direct their subsidiaries to enter into the Transition Agreement and those agreements related thereto. To the extent of any conflict or inconsistency between the Transition Agreement and the term sheet approved by order of the Court entered on September 20, 2011 [Docket No. 212], the Transition Agreement shall govern.

**J.      Restructuring Transactions.**

74.      On or after the Effective Date, the Debtors or Reorganized Caribe, as applicable, are authorized, but not directed, to enter into the Restructuring Transactions, and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of Reorganized Caribe, as and to the extent provided in the Plan.

**K.      Exit Facility.**

75.     The provisions of the Exit Facility are approved in their entirety. The Debtors and Reorganized Caribe are hereby authorized to execute and deliver any documents required to effectuate the Exit Facility without further approval of the boards of directors of the Debtors or Reorganized Caribe and without further notice to or order of the Court, act, or action under applicable law, regulation, order, rule or vote, consent, authorization, or approval of any person. The Debtors and Reorganized Caribe are authorized to file any necessary terminations and releases related to the Exit Facility without any consent from third parties. The Exit Facility shall constitute legal, binding, and authorized obligations of Reorganized Caribe, enforceable in accordance with their terms. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Facility shall be deemed to be approved and shall be legal, binding, and enforceable liens on the collateral granted thereunder. In furtherance of the foregoing, Reorganized Caribe and any other person granting such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of any state, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Order, and shall thereafter cooperate to make all other filings and recordings that would be necessary under applicable law to give notice of such liens and security interests to third parties. The Debtors have exercised reasonable business judgment in connection with the Exit Facility and the proposed terms thereunder have been negotiated in good faith and at arm's length and are fair and reasonable.

76.     Each Exit Facility Lender shall be bound by and subject to the terms and conditions of the Exit Facility regardless of whether any such Exit Facility Lender executes the Exit Facility (and any other related documentation). The Exit Facility Administrative Agent

29

shall (a) not be obligated to make any payments to any Exit Facility Lender, whether of principal, interest, or otherwise, until such Exit Facility Lender (or its successor or assign) has delivered to the Exit Facility Administrative Agent duly and authorized executed signature pages for the Exit Facility (and any other related documentation) and (b) shall hold all payments on behalf of each such Exit Facility Lender that has not executed any required signature pages for the Exit Facility until the earlier of (1) such time as such Exit Facility Lender has delivered to the Exit Facility Administrative Agent a duly and authorized executed signature page for the Exit Facility (and any other related documentation) and (2) the date the loans and any other amounts owing to all of the Exit Facility Lenders that have delivered duly and authorized signature pages for the Exit Facility (and any other related documentation) shall have been paid in full in cash.

L.      **Issuance of Reorganized Caribe Common Stock.**

77.     The issuance of the Reorganized Caribe Common Stock by Reorganized Caribe, including any options for the purchase thereof and equity awards associated therewith, is authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Caribe, as applicable. The Reorganized Caribe Charter shall authorize the issuance and distribution on or after the Effective Date of shares of Reorganized Caribe Common Stock to the Distribution Agent for the benefit of holders of Allowed Claims in Class 2, subject to dilution by the Management Equity Incentive Program. All of the shares of Reorganized Caribe Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

78.     If a holder of a Senior Secured Credit Facility Claim does not execute and deliver any required signature pages for the Reorganize Caribe Shareholder's Agreement on or before the 90th day following the Effective Date, such holder shall be deemed to have waived its right to receive its Pro Rata Share of the Reorganized Caribe Common Stock, which shall then be

distributed pro rata to holders of the Senior Secured Credit Facility Claims that have executed and delivered duly and authorized signature pages for the Reorganized Caribe Shareholder's Agreement.

**M.   Cancellation of Securities and Agreements.**

79.   On the Effective Date, except to the extent otherwise provided in the Plan or this Order, the Senior Secured Credit Facility Agreement, the Senior Subordinated Note, and any instruments, Certificates, and other documents evidencing Interests will be cancelled and the obligations of the Debtors or Reorganized Caribe thereunder will be discharged; provided, however, that notwithstanding Confirmation or the occurrence of the Effective Date: (a) the Senior Secured Credit Facility Agreement will continue in effect solely for purposes of (1) allowing holders of Allowed Senior Secured Credit Facility Claims to receive distributions under the Plan, (2) allowing and preserving the rights of the Senior Secured Credit Facility Administrative Agent to make distributions on account of Allowed Senior Secured Credit Facility Claims, and (3) governing the relationship of the Senior Secured Credit Facility Administrative Agent and the Senior Secured Credit Facility Lenders, including those provisions of the Senior Secured Credit Facility Agreement relating to the Senior Secured Credit Facility Administrative Agent's rights of indemnification from the Senior Secured Credit Facility Lenders; and (b) all security interests, Liens and other encumbrances granted to secure the Senior Secured Credit Facility Claims shall survive and shall continue to secure Reorganized Caribe's obligations under the Exit Facility.

**N.   Corporate Existence.**

80.   Except as otherwise provided in the Plan, in the corporate governance documents, or elsewhere in the Plan Supplement, each Debtor, as reorganized, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other

K&E 20360560

form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed.

**O.  New Formation Documents.**

81.    On or immediately prior to the Effective Date, Reorganized Caribe will file its articles of incorporation and/or other applicable formation documents with the applicable Secretary of State and/or other applicable authority in its state or country of formation.  In accordance with section 1123(a)(6) of the Bankruptcy Code, such formation documents will prohibit the issuance of non-voting equity securities.  After the Effective Date, Reorganized Caribe may amend and restate its articles of incorporation and other constituent documents as permitted by the laws of its jurisdiction of formation and its formation documents.

**P.  Reorganized Caribe's Board of Directors.**

82.    On the Effective Date, the terms of the current members of the board of directors and the appointment of the officers of Caribe Media, Inc. shall terminate and the New Caribe Board and the new officers of Reorganized Caribe shall be appointed.  From and after the Effective Date, each director or officer of Reorganized Caribe shall serve pursuant to the terms of Reorganized Caribe constituent documents and applicable state corporation law.  The members of the New Caribe Board will be elected by the Senior Secured Credit Facility Lenders holding more than 50% of the amount of the Senior Secured Credit Facility (the "Required Lenders").  Holders of the Senior Secured Credit Facility Claims will hold both the debt and equity in Reorganized Caribe's post-emergence capital structure.  Accordingly, the Required Lenders' selection of directors and officers is consistent with the interests of creditors and equity security holders and public policy, in accordance with section 1129(a)(5) of the Bankruptcy

Code. On the Effective Date, the terms of the current members of the board of directors and the appointment of officers of CII Acquisition Holdings, Inc. shall terminate.

**Q.      Incentive Plans and Employee and Retiree Benefits.**

83.      Except as otherwise provided in this Order or in the Plan, on and after the Effective Date, subject to any Final Order, Reorganized Caribe shall (a) amend, adopt, assume, and/or honor in the ordinary course of business, any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, including any incentive plan, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Court order.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**R.      Management Equity Incentive Program.**

84.      On or following the Effective Date, the New Caribe Board shall adopt and implement the Management Equity Incentive Program.  Ten percent of the Reorganized Caribe Common Stock shall be reserved for the Management Equity Incentive Program.

**S.      Vesting of Assets in Reorganized Caribe.**

85.      Except as otherwise provided in the Plan, this Order, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in

33

each Estate, all Causes of Action, and any property acquired by either of the Debtors pursuant to the Plan shall vest in Reorganized Caribe, free and clear of all Liens, Claims, charges, or other encumbrances other than the Liens, Claims, charges, encumbrances and obligations arising out of or granted in connection with the Exit Facility. On and after the Effective Date, except as otherwise provided in the Plan, Reorganized Caribe may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**T.     Effectuating Documents; Further Transactions.**

86.     On and after the Effective Date, Reorganized Caribe, and the officers and members of the board of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of Reorganized Caribe, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

**U.     Section 1146 Exemption from Certain Taxes and Fees.**

87.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

## V.       Preservation of Rights of Action.

88.     Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, Reorganized Caribe shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and Reorganized Caribe's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. Reorganized Caribe may pursue such Causes of Action, as appropriate, in accordance with its best interests. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Caribe will not pursue any and all available Causes of Action against them. The Debtors and Reorganized Caribe expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, Reorganized Caribe expressly reserves all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation. For the avoidance of doubt, the Plan does not release any Causes of Action that the Debtors or Reorganized Caribe have or may have now or in the future against any Non-Released Party.

35

89.     Reorganized Caribe reserves and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in Reorganized Caribe.  Reorganized Caribe, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  Reorganized Caribe shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Court.

**W.     Executory Contracts and Unexpired Leases.**

**i.     Assumption and Rejection of Executory Contracts and Unexpired Leases.**

90.     Except as otherwise provided in the Plan or this Order, and subject to the terms of the Transition Agreement, Reorganized Caribe will assume, on the Effective Date, all of its Executory Contracts and Unexpired Leases under section 365 of the Bankruptcy Code.  Except as otherwise provided in the Plan or agreed to by the Debtors with the applicable counterparty, each assumed Executory Contract or Unexpired Lease will include all modifications, amendments, supplements, restatements, or other agreements related thereto and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated hereunder.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases will not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity,

36

priority, or amount of any Claims that may arise in connection therewith. Except as otherwise set forth in the Transition Agreement, no Cure amount will be deemed owing nor will any Cure amount be required to be paid to a counterparty to any Executory Contract, including the Intercompany Contract, or any Unexpired Lease in connection with its assumption.

91.    Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise will result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to this Order, will be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Court.

### ii.    Contracts and Leases Entered Into After the Petition Date.

92.    Obligations under contracts, and leases entered into after the Petition Date by Caribe Media, Inc. and any Executory Contracts and Unexpired Leases assumed by Caribe Media, Inc. shall be performed in accordance with their terms by Reorganized Caribe in the ordinary course of business.

### iii.    Insurance Policies.

93.    Except as otherwise set forth in the Transition Agreement, including any exhibits attached thereto, on the Effective Date, Reorganized Caribe and its subsidiaries, as applicable, will cease being beneficiaries under any insurance policy held by any of the Local Insight Companies.

### X.    Failure of Consummation.

37

94.     If the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims, Interests, or Causes of Action, (ii) prejudice in any manner the rights of any Debtor or any other Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

**Y.     Provisions Governing Distributions.**

95.     The distribution provisions of Article VI of the Plan are hereby approved and authorized in their entirety. Except as otherwise set forth in the Plan, Reorganized Caribe shall make all distributions required under the Plan. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

**Z.     Discharge of Claims and Termination of Interests.**

96.     **Except as otherwise provided for in the Plan and effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the**

38

kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, Reorganized Caribe, their successors and assigns, and their assets and properties, any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

**AA.    Releases by the Debtors.**

97.    Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided for in the Plan, for good and valuable consideration, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors and the Estates from any and all Claims, obligations, rights, and liabilities whatsoever, including any Claim asserted in any Local Insight Proof of Claim, but excluding any Claim, obligation, right, or liability arising under the Transition Agreement, as applicable, whether for tort, fraud, contract, violations of federal or state securities laws, avoidance or recovery of transfers under chapter 5 of the Bankruptcy Code or any similar law of any state, commonwealth, territory, or country, or otherwise, including any derivative Claims, asserted or that could possibly have been asserted directly or indirectly on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, and any and all Causes of Action asserted or that could possibly have been asserted on behalf of the Debtors, except any Cause of Action arising under the Transition Agreement, that the Debtors, Reorganized Caribe, the Estates, or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Affiliates, the Chapter 11 Cases, a Local Insight Proof of Claim, the

39

purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or Reorganized Caribe, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan and Disclosure Statement or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than (except with respect to the WCAS Releasees, Senior Secured Credit Facility Administrative Agent, and Senior Secured Credit Facility Lenders) Claims or liabilities arising out of or related to any contractual or fixed monetary obligation owed to the Debtors or Reorganized Caribe.

98.     Entry of this Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in <u>Section 8.2</u> of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by <u>Section 8.2</u> of the Plan; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors asserting any Claim or Cause of Action released by <u>Section 8.2</u> of the Plan.

99.     Notwithstanding anything contained in the Plan to the contrary, for purposes of <u>Section 8.2</u> of the Plan, no Non-Released Party is a Released Party.

BB.     Releases by Holders of Claims and Interests.

100.     Except as otherwise specifically provided for in the Transition Agreement, as of the Effective Date, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtors, the Estates, and the Released Parties from any and all Claims, Interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including all claims and actions against any Entities under the Bankruptcy Code) whatsoever, whether for tort, fraud, contract, violations of federal or state securities laws, avoidance or recovery of transfers under chapter 5 of the Bankruptcy Code or any similar law of any state, commonwealth, territory, or country, or otherwise, including any derivative Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or Reorganized Caribe, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related

41

agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including the Transition Agreement, and those exhibits attached thereto, and those set forth in the Plan Supplement) executed to implement the Plan.

101.    Entry of the Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in <u>Section 8.3</u> of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Debtors, Reorganized Caribe, the Estates, and the Released Parties; (b) a good faith settlement and compromise of the Claims released by <u>Section 8.3</u> of the Plan; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release under <u>Section 8.3</u> of the Plan from asserting any Claim or Cause of Action released by <u>Section 8.3</u> of the Plan.

102.    Notwithstanding anything contained in the Plan to the contrary, for purposes of <u>Section 8.3</u> of the Plan, no Non-Released Party is a Released Party.

CC.    Exculpation.

103.    No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; <u>provided</u>, <u>however</u>, that the foregoing

"exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct or the liability of any Debtor or Reorganized Caribe not exculpated under the Transition Agreement in connection with Claims arising thereunder; **provided**, **further**, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan. The Exculpated Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

104.    Notwithstanding anything contained in the Plan to the contrary, for purposes of Section 8.4 of the Plan, no Non-Released Party is an Exculpated Party.

**DD.    Injunction.**

105.    Except as otherwise provided in the Plan or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Section 8.2 or Section 8.3 of the Plan, discharged pursuant to Section 8.1 of the Plan, or are subject to exculpation pursuant to Section 8.4 of the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, Reorganized Caribe, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in

43

connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, exculpated, or settled pursuant to the Plan.**

106.     **Notwithstanding anything contained in the Plan to the contrary, for purposes of <u>Section 8.5</u> of the Plan, no Non-Released Party is an Exculpated Party or a Released Party.**

EE.     **Certain Internal Revenue Service Claims**

107.     Notwithstanding any provision to the contrary in the Plan, this Order, or any implementing Plan documents, nothing shall: (a) require the Internal Revenue Service to file an administrative expense claim in order to receive payment for any liability described in sections 503(b)(1)(B) and 503(b)(1)(C) of the Bankruptcy Code in accordance with Section 503(b)(1)(D) of the Bankruptcy Code; (b) affect the rights of the Internal Revenue Service to assert setoff and recoupment, and such rights are expressly preserved; (c) discharge any Claim of the Internal Revenue Service described in section 1141(d)(6) of the Bankruptcy Code; and (d) extend the automatic stay with respect to any Internal Revenue Service Claims beyond the time set forth in section 362(c)(2)(C) of the Bankruptcy Code.   To the extent the Internal Revenue Service Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under

44

the Bankruptcy Code), if any, are not paid in full in Cash on the Effective Date, the Internal Revenue Service Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. §§ 6621 and 6622. Internal Revenue Service administrative expense claims shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.

**FF.   Term of Injunction or Stays.**

108.   Unless otherwise provided in the Plan or this Order, any injunction or stay arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**GG.   Release of Liens.**

109.   Except as otherwise provided in the Plan or this Order or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Facility, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to Reorganized Caribe and its successors and assigns; provided, however, that all security interests, Liens and other encumbrances granted to secure the Senior Secured Credit Facility Claims shall survive and shall continue to secure Reorganized Caribe's obligations under the Exit Facility.

**HH.   Recoupment.**

110.   In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or Reorganized Caribe, as

45

applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

## II.    Immediate Binding Effect.

111.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, Reorganized Caribe, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## JJ.    Additional Documents.

112.    On or before the Effective Date, the Debtors may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.    The Debtors or Reorganized Caribe, as applicable, and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## KK.    Confirmation Order Supersedes.

113.    This Order supersedes any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with this Order.

46

**LL.    Conflicts Between This Order and the Plan.**

114.    The provisions of the Plan and of this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Order shall govern and any such provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.

**MM.   Notice of Entry of this Order.**

115.    Reorganized Caribe shall service notice of entry of this Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on (a) the U.S. Trustee; (b) counsel to the Senior Secured Credit Facility Administrative Agent; (c) counsel to the Senior Subordinated Noteholder; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the Office of the Attorney General for the State of Delaware; (g) those parties who have requested notice pursuant to Bankruptcy Rule 2002; and (h) all known creditors not included above, in substantial compliance with the Solicitation Procedures and Bankruptcy Rule 3020(c), by causing notice of entry of this Order to be delivered to such parties by first-class mail, postage prepaid, within 10 business days after entry of this Order.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.

116.    As soon as practicable after the occurrence of the Effective Date, Reorganized Caribe shall file notice of the Effective Date and shall serve a copy of same on the above-mentioned parties; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have

been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. Such notice is adequate under the particular circumstances and no other or further notice is necessary.

**NN.   Professional Compensation.**

117.   All final requests for payment of Professional Claims shall be filed no later than 45 days after the Effective Date.   After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Court orders, the Allowed amounts of such Professional Claims shall be determined by the Court.

118.   In accordance with Section 2.2 of the Plan, on the Effective Date, Reorganized Caribe shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained by Reorganized Caribe in trust for the Professionals.   Such funds shall not be considered property of the Estate of Reorganized Caribe.   The amount of Professional Claims owing to the Professionals shall be paid in Cash to such Professionals by Reorganized Caribe from the Professional Fee Escrow Account when such Claims are Allowed by a Final Order.   When all such amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall be distributed to Reorganized Caribe.

119.   Professionals shall estimate their Professional Claims and other fees and expenses incurred in rendering services to the Debtors prior to and as of the Effective Date and shall deliver such estimate to the Debtors and the Senior Secured Credit Facility Administrative Agent no later than five days prior to the Effective Date, provided, however, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Claims filed with the Court. If a Professional does not provide an estimate, Reorganized Caribe may estimate the unbilled fees and expenses of such

48

Professional. The total amount estimated pursuant to <u>Section 2.2(c)</u> of the Plan shall comprise the Professional Fee Reserve Amount.

120.    Except as otherwise specifically provided in the Plan, from and after the Effective Date, Reorganized Caribe shall in the ordinary course of business, and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable legal, professional, or other fees and expenses incurred by Reorganized Caribe, including, without limitation, fees and expenses related to Consummation and implementation of the Plan. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and Reorganized Carribe may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**OO.    Governmental Approvals Not Required.**

121.    Except as otherwise specifically provided herein, this Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

**PP.    Effectiveness of All Actions.**

122.    All actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Order, without further application to, or order of the Court, or further action by the respective officers, directors, members, or stockholders of the

Debtors or Reorganized Caribe and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

**QQ. Substantial Consummation.**

123.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**RR. Nonseverability of Plan Provisions Upon Confirmation.**

124.    This Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

**SS. Authorization to Consummate.**

125.    The Debtors shall consult with the Senior Secured Credit Facility Administrative Agent regarding the timing of the Effective Date and will not declare the occurrence of the Effective Date without either consent of the Senior Secured Credit Facility Administrative Agent or, upon notice to the Senior Secured Credit Facility Administrative Agent, further order of the Court. Subject to the preceding sentence, the Debtors and Reorganized Caribe are authorized to consummate the Plan at any time after the entry of this Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX of the Plan.

**TT. Retention of Jurisdiction.**

126.    This Court may properly, and upon the Effective Date shall, retain jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Cases, as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

K&E 20360560

**UU.   Provisions of the Cash Collateral Order Survive.**

127.   The provisions of the Cash Collateral Order shall survive Confirmation of the

Plan, entry of this Order, and the occurrence of the Effective Date.

**VV.   Final Order.**

128.   This Order is a final order and the period in which an appeal must be filed shall

commence upon the entry hereof.

Dated: November 3, 2011
     Wilmington, Delaware

               THE HONORABLE KEVIN GROSS
               CHIEF UNITED STATES BANKRUPTCY JUDGE